UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JAMES LIGHTFOOT,                              )
                                              )
          Plaintiff,                           )
                                              )
v.                                            )
                                              )  Civil Action No.:  04-1280 (RBW)
DISTRICT OF COLUMBIA, et al.,                 )
                                              )
                                              )
          Defendants.                          )
                                              )
_____)

**MEMORANDUM OPINION**

On July 30, 2004, the plaintiff, an employee of the District of Columbia Public Schools ("DCPS"), filed this action against the defendants, Robert Graves and the DCPS. The plaintiff alleges the following claims: (1) a violation of the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. (2000); (2) a violation of the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501, et seq. (2003); (3) breach of contract; and (4) intentional infliction of emotional distress. Currently before the Court is the Defendants' Motion for Judgement on the Pleadings (Defs.' Mot.).[1] For the reasons set forth below, the defendants' motion is granted.[2]

---

[1] The following papers have been submitted to the Court in connection with the motions: (1) the Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Judgement on the Pleadings ("Defs.' Mem."); (2) the Plaintiff's Memorandum in Opposition to Defendants' Motion for Judgement on the Pleadings ("Pl.'s Opp'n"); and (3) the Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Judgement on the Pleadings (Defs.' Reply).

[2] There are a number of other procedural motions before the Court, namely: (1) Defendant Grave's Motion

(continued...)

## I.   Factual Background

The DCPS hired the plaintiff, James Lightfoot, as an Assistant Principal at Spingarn Senior High School ("Spingarn") in the District of Columbia in August 2001. Complaint ("Compl.") at ¶ 4. On March 12, 2003, the plaintiff submitted an "Application of Leave," which requested twenty-four days off commencing on March 13, 2003, and concluding on April 15, 2003, due to "severe job related anxiety and stress." Id. ¶ 5. This application included a medical certification from his physician, Dr. Thomas Gay, recommending that the plaintiff not work for at least one month. Id. In response to the plaintiff's request, Robert Graves, the Principal at Spingarn, wrote to the plaintiff informing him that the proper procedure for requesting such leave

---

²(...continued)
to Set Aside Default Judgment; (2) the Plaintiff's Motion for Leave to File a Surreply; and (3) the Plaintiff's Motion to Amend the Complaint. The resolution of these motions are the following: First, it is well-settled that "since a resolution on the merits is preferable to a judgement by default, a court should liberally allow relief under [Federal Rule of Civil Procedure 60(b)]." Butler v. Pearson, 636 F.2d 526, 530 (D.C. Cir. 1980); Pulliam v. Pulliam, 478 F.2d 935, 936 (D.C. Cir. 1973). Here, the plaintiff has failed to file an opposition to this motion, and this Court finds that "good cause" exists to set aside the default judgement against defendant Graves and that doing so will not prejudice the plaintiff. Second, the plaintiff's Motion to File a Surreply is denied. "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond." United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 274-75 (D.D.C. 2002). Here, the defendants' reply does not raise any new matters; rather, the defendants merely respond to the plaintiff's arguments contained in his opposition. In fact, the plaintiff's surreply raises facts and legal issues not previously addressed. Thus, it is not appropriate to permit the surreply to be filed. Finally, the Court will deny the plaintiff's motion to amend the complaint. In this motion, the plaintiff, without asserting any additional facts, seeks to add a "count of retaliation and discharge for filing his [FMLA] request." Pl.'s Mot. Amend at 4. The Federal Rules of Civil Procedure state that "leave to amend [a complaint] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Furthermore, "a district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F. 3d 930, 945 (D.C. Cir. 2004). See also Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (holding that "'undue delay, bad faith, . . . dilatory motive . . .[,] repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment'" are all valid reasons "to deny leave to amend.") (quoting Forman v. Davis, 371 U.S. 178, 182 (1978)). As discussed more fully hereafter, the plaintiff has failed to state a claim upon which relief can be granted for his FMLA claim; thus, the plaintiff's amendment is futile as the retaliation claim would have to be dismissed as well. See Baldwin-Love v. Electronic Data Systems Corp., 307 F. Supp. 2d 1222, 1235 (M.D. Ala. 2004) (holding that because the plaintiff "failed to provide certifications for her absences[,] . . . she did not avail herself of the protections of the FMLA[, and] [t]herefore, [her] claim for retaliatory discharge under the FMLA [was] . . . dismissed."); Aubuchon v. Knauf Fiberglass, GMBH, 240 F. Supp. 2d 859, 870 (S.D. Ind. 2003); Smith v. Colo. Interstate Gas Co., 794 F. Supp. 1035, 1038-39 (D. Colo. 1992); see also Johnson v. Indopco, Inc., No. 95-2616, 1996 WL 122830, at *1 (7th Cir. 1996).

was to complete an "Application for Leave of Absence Re: Extended Leave of Absence and the Family Leave Act." Id. ¶ 6. Graves included a copy of the application with his response. Id. In addition to completing the application, the plaintiff was required to submit all necessary supporting documentation and comply with the requirements of both the "Family Leave Act and the Board Rules." Id. Moreover, the letter from Graves noted that until the plaintiff completed the enclosed application and his request was approved, he would be placed in an absent without leave status, which could lead to discplinary actions. Id. After receiving Graves's response, one of the school's employees, a time keeper, notified the plaintiff that "she had not received his medical certification and could not process [her] payroll." Id. ¶ 7. To address this deficiency, the plaintiff allegedly delivered the medical certification to the school. Id. Nonetheless, on April 3, 2003, the plaintiff received a letter from Graves stating that he was "no longer privileged to enter the premises or grounds of Spingarn . . . ." Id. ¶¶ 7-8. The letter notified the plaintiff that all further communications should be directed to the Assistant Superintendent of the DCPS. Id. ¶ 8.

Following receipt of this letter, the plaintiff initiated a grievance procedure. Id. ¶¶ 9-13. However, before the grievance process commenced, the plaintiff was notified that he should return to work on May 5, 2003. Id. ¶ 15. However, on May 4, 2003, the plaintiff sent a letter to Graves stating:

> This letter is to notify you that pursuant to D.C. Code [§] 32-506 and District of Columbia Municipal Regulations Title 1600 — The Family Medical Leave Act — I will be away from my job as Assistant Principal at Spingarn High School for a period of sixteen (16) weeks or less depending upon the advise of my medical doctor. This is also to notify you that the original "Application for Leave" I submitted on March 14, 2003 is now being converted to absence under the Family and Medical Leave Act. Therefore, my Medical Leave remedies are retroactive to March 14, 2003. In accordance with the Act, I will be submitting to you a medical certificate issued by my health care provider as soon as practicable. I have an appointment with my doctor scheduled for Monday, May 5,

2003. Id. ¶ 16. The plaintiff notes that he received a "Certificate of Disability" from his physician on May 20, 2003, which stated that he should not return to work until June 15, 2003. Id. ¶ 17. However, the plaintiff never submitted the certificate to his employer. Id. And, in a letter dated May, 7, 2003, the plaintiff was informed that he had been terminated. Id. ¶ 18. In a separate letter, the plaintiff was informed that he could continue to pursue his grievance through the Council of School Officers ("CSO"), as it is the exclusive representative of assistant principals. Id.

Dissatisfied with the processing of his grievance, and believing that it had not been fully resolved, the plaintiff resubmitted his grievance to the Superintendent of the DCPS. Id. ¶ 19. The plaintiff did not receive a response from the Superintendent, and subsequently filed an administrative complaint with the Equal Employment Opportunity Counsel ("EEOC") for the DCPS. Id. The EEOC failed to timely investigate the plaintiff's allegations within the required statutory time period, and thus, the plaintiff filed a complaint with the District of Columbia Office of Human Rights ("DCOHR"). Id. ¶¶ 21-22. The parties attempted to resolve the dispute, but failed. Id. ¶¶ 23-34. Thus, the plaintiff withdrew the complaint he had filed with the DCOHR, and filed this action. Id. ¶ 35.

## II.   Standard of Review

A Court will grant judgement on the pleadings "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Fed. R. Civ. P. 12(c); Longwood Village Rest., Ltd. v. Ashcroft, 157 F. Supp. 2d 61, 66 (D.D.C. 2001) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). "If there are allegations in the complaint

which, if proved, would provide a basis for recovery[,]" the Court cannot grant judgement on the pleadings. Haynesworth v. Miller, 820 F. 2d 1245, 1254 (D.C. Cir 1987) (citations omitted). Accordingly, all factual doubts must be resolved in favor of the plaintiff. Id. (citations omitted). The standard of review under Rule 12(c) is essentially the same as that for a motion to dismiss under Rule 12(b)(6). Jung v. Ass'n of Am. Med. Colls., 339 F. Supp. 2d 26, 35 (D.D.C. 2004) (citations omitted); see generally 2 Moore's Federal Practice, § 12.38 (3d ed. 2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Comm'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). "[T]he complaint need only set forth 'a short and plain statement of the claim,' Fed. R. Civ. P. 8(a)(2), giving the defendant fair notice of the claim and the grounds upon which it rests." Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Conley, 355 U.S. at 47). "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48. While many well-plead complaints are conclusory, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. Kowal, 16 F.3d at 1276. Moreover, in deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and

matters about which the Court may take judicial notice. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 & n.3. A court may dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

### III.   Legal Analysis

The defendants have moved for judgment on the pleadings asserting that each of the claims raised by the plaintiff are deficient as a matter of law. Defs.' Mem. at 2. The Court will therefore address each of the plaintiff's claims below.

**(A)   The Plaintiff's Federal Family and Medical Leave Act Claim**

The defendants contend that the plaintiff's federal FMLA claim should be dismissed as a matter of law because (1) the plaintiff failed provide a timely and complete medical certification required by the FMLA, and (2) he has not sufficiently alleged that he is suffering from a serious health condition. Defs.' Mem. at 4-7. The plaintiff, on the other hand, contends that his application for leave submitted on March 14, 2003, was timely and that he suffered from a serious health condition as defined by the FMLA. Pl.'s Opp'n at 3-4.

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2000); see also Price v. Wash. Hosp. Center, 321 F. Supp. 2d 38, 45 n.1 (D.D.C. 2004) (quoting Chang v. Inst. for Public-Private P'ships, Inc., No. 02-CV-1256, 2004 WL 742806, at *7 (D.D.C. 2004)). A "serious health condition" is defined by FMLA as "an illness, injury, impairment, or physical mental condition that involves [either] inpatient care in a

hospital . . . or continuing treatment by a health care provider." 29 U.S.C. § 2611(11) (2000). Regulations promulgated under the FMLA further provide that a serious health condition that involves continuing treatment by a health care provider includes:

> (i) a period of incapacity . . . of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves[:]
>
> > (A) Treatment two or more times . . . ; or
> >
> > (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R § 825.114(a) (2005).[3] Therefore, for a leave of absence to qualify under the FMLA, a plaintiff must allege that there was a period of incapacity of at least three days along with treatment for that condition by a health care provider either (1) on two or more occasions, or (2) at least once, as long as it results in a regimen of continuing treatment under that provider's supervision. Russell v. North Broward Hosp., 346 F.3d 1335, 1342 (11th Cir. 2003). The regulation further provides that "treatment . . . includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.114(b).

It is the plaintiff's burden to establish that the leave of absence was caused by a "serious health condition." Bauer v. Varity Dayton-Walther Corp., 118 F. 3d 1109, 1112 (6th Cir. 1997).

---

[3] Neither party challenges the Department of Labor's interpretation of the FMLA as set forth in 29 C.F.R. § 825.114(a), and this Court is in no position to make such a determination without the benefit of briefing on the issue and without providing the United States an opportunity to address the issue. Nonetheless, the Court notes that other provisions of these regulations have been upheld and this Court can fathom no reason why the provision at issue here should not be upheld as well. See, e.g., Russell v. N. Broward Hosp., 346 F.3d 1335 (11th Cir. 2003); Miller v. AT & T Corp., 250 F.3d 820 (4th Cir. 2001); Gudenkauf v. Stauffer Commc'n, Inc., 922 F. Supp. 465 (D. Kan. 1996).

Moreover, an employer can require that an employee's request for leave under the FMLA be supported by a medical certification issued by the employee's health care provider. 29 U.S.C. § 2613(a) (2000). A medical certification is sufficient if it states: "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; [and] (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition." 29 U.S.C. § 2613(b). An employer's request for a medical certification must be accompanied by a notice indicating the consequence of failing to provide an adequate certification. 29 C.F.R. § 825.301(b)(1)(ii). However, if the employer "finds a certification incomplete," it must "provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d); see also Kaufman v. Fed. Express Corp., 426 F. 3d 880, 886 (7th Cir. 2005).

      The defendants first contend that the plaintiff failed to provide an adequate medical certification to the DCPS. Defs.' Mem. at 4-5. Although the complaint lacks specificity, in that it does not detail the contents of the medical certification submitted to the defendants in March 2003, the plaintiff attached what he purports to be his medical certification to his opposition. Pl.'s Opp'n, Attach. 2 (medical certification from Dr. Thomas Gay). This certification provides: (1) that the plaintiff's totally incapacitating health condition commenced on March 13, 2003 and would continue until April 15, 2003; (2) that the plaintiff had "been seen and evaluated for severe job related anxiety and stress;" and (3) that the plaintiff had been "advised not to work for at least one month." Id. This was clearly sufficient to satisfy the requirements of 29 U.S.C. § 2613(a). However, the plaintiff failed to comply with the defendants' request for additional


information.[4]  Compl. ¶¶ 6, 17.  Admittedly, it is unclear what additional information, if any, the defendants sought.  Id. ¶ 6 (stating that Principal Graves advised the plaintiff that his "Application form must be resubmitted to [the principal] with supporting documentation.").  And the FMLA requires nothing more than what was provided by the plaintiff.  Accordingly, this Court cannot conclude that the plaintiff failed to provide the requisite medical certification as required by 29 U.S.C. § 2913.  Thus, the defendants are not entitled to judgment on the pleadings on this ground.

Second, the defendants assert that the plaintiff has failed to allege any facts in his complaint from which this Court could conclude that he has suffered from a "serious health condition" as required by the FMLA.  Defs.' Mem. at 6-7.  Specifically, the defendants argue that the plaintiff's physician simply "evaluated" him "for severe job related anxiety and stress," and did not indicate that the plaintiff was involved in either inpatient or continuing care.  Defs.' Mem. at 7.  In response, the plaintiff contends that his condition was a "serious health condition" because his physician required him to be "away from work . . . [for] more than three consecutive calendar days."  Pl.'s Opp'n at 3-4.  However, contrary to the plaintiff's position, this Court cannot conclude that the facts alleged in the complaint demonstrate that the plaintiff had a serious health condition within the meaning of the FMLA.

As already discussed, the FLMA defines a "serious health condition," as "an illness, injury, impairment, or physical mental condition that involves [either] inpatient care in a hospital . . . or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  Here, there are no

---

[4] The plaintiff appears to have received a second medical certification but it was never provided to the school. Id. ¶ 17.

9

allegations that the plaintiff was involved in inpatient care. Thus, the Court must examine whether he has alleged facts in his complaint which support the conclusion that he was engaged in continuing treatment by a health care provider. The regulation promulgated to implement the FMLA sets forth a two prong-test to determine if a person is receiving continuing treatment by a health care provider. First, the plaintiff must demonstrate that there is "a period of incapacity . . . of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition . . . ." 29 C.F.R § 825.114(a)(1). And second, the plaintiff must show that he has either been (1) treated more than two times; or (2) treated "by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R § 825.114(a)(1); see Russell, 346 F.3d at 1342.

     Here, the plaintiff's medical certification from his physician states that he should not work for at least a month. Pl.'s Opp'n, Attach. 2. In addition, the certification notes that the plaintiff was "totally incapacitated" at the time the medical certification was issued. Id. Thus, the plaintiff has satisfied the first prong of the test. As to the second prong, there are no allegations that the plaintiff is undergoing "a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.114(a)(i)(B). The medical certification simply states that the plaintiff was "seen and evaluated for severe job related anxiety and stress," but there is no indication of any continuing treatment in the medical certification. Pl.'s Opp'n, Attach. 2. Moreover, there are no allegations in the complaint or the papers before the Court that the plaintiff was undergoing continuing treatment under the supervision of a health care provider. Thus, to fall under the protection of the FMLA, the plaintiff must demonstrate that he had been

treated two or more times.  From the plaintiff's complaint, it is clear that he was initially treated by his physician on or around March 12, 2003, the date when his medical certification was issued.  Compl. ¶ 5.  The complaint, however, fails to allege any further facts which demonstrate that the plaintiff was treated on a second occasion.  While the complaint indicates that the plaintiff was scheduled to see his doctor again on May 5, 2003, compl. ¶ 16, there is no indication that he ever went to this appointment, or had a further evaluation.  Rather, the plaintiff merely suggests that he had scheduled the appointment.  This is simply insufficient for the Court to conclude that the plaintiff was treated on two or more occasions.

      The plaintiff did, however, receive a second medical certification from his physician on May 20, 2003, which indicated that he should not work from March 13, 2002 through June 15, 2003.  Id. ¶¶ 16-17.  Even if this Court could conclude that the plaintiff received treatment before receiving this second medical certification, the plaintiff still failed to trigger the protections of the FMLA for several reasons.  First, the plaintiff admits that he never delivered this second medical certification to his employer.  Id. ¶ 18.  Thus, this Court cannot conclude that the plaintiff satisfied the FMLA requirements because he failed to provide his employer with the information the employer needed to determine whether the plaintiff was eligible for FMLA benefits.  Bauer, 118 F. 3d at 1112 (noting that the burden is on the plaintiff to establish eligibility for FMLA protection).  Second, this Court cannot conclude that this subsequent evaluation, assuming it occurred, satisfies the requirements of the FMLA because the first medical certificate indicated that the plaintiff would be incapacitated until April 14, 2003, and the second evaluation would not have occured until well over a month after that date — May 20, 2003.

      The two treatment requirement, on its face, seems quite simple to satisfy — an individual

must be treated twice.  In certain unique situations, such as the one here, the application is more complicated because the second alleged treatment did not occur until after the date on which the plaintiff could return to work as stated in the first medical certification.  Thus, the issue becomes whether this second treatment, which occurred outside the initial period of incapacitation, satisfies FMLA regulation 29 C.F.R. § 825.114(a).  Although the District of Columbia Circuit has not yet addressed this question, this Court is persuaded by the Tenth Circuit, which concluded that the FMLA requires that the second treatment occur "during the 'period of incapacity' . . . ."  Jones v. Denver Pub. Sch., 427 F.3d 1315, 1323 (10th Cir. 2005).[5]  In Jones, the Court found that by "fram[ing] the definition [of serious health condition] in terms of a period of incapacity that involves at least two treatments," the FMLA "indicates that the timing of the treatments and not just the need for treatments is important."  Id. at 1321.  The Jones Court found that "this emphasis on the 'period of incapacity' reinforces the view that the necessary treatments must be temporally linked to that period."  Id. at 1320.  Moreover, the Jones Court concluded that an "indefinite timeframe reading [of the FMLA] would place employers in a position of uncertainty regarding their FMLA obligations," and "would invite strategic behavior by [employees], who could schedule a second visit to 'determine if a serious health condition exists' long after all symptoms have subsided, solely to bolster their claim of entitlement to

---

[5] The Jones Court recognized that several district courts have concluded otherwise, i.e., that "'the regulation by its plain language merely requires two or more treatments, without distinguishing between treatments occurring during or after the initial period of incapacity.'"  Id. at 1320 (quoting Summerville v. Esco Co. Ltd. P'ship, 52 F. Supp. 2d 804, 810 (W.D. Mich. 1999) (citations omitted).  But see, Doughite v. Ashland, Inc., No. 03-2073, 2005 WL 1239286, at * 4-5 (W.D. Tenn. 2005) (holding that plaintiff failed to establish that he suffered from a "serious health condition" where the plaintiff's first follow-up visit to his physician occurred 11 days after the plaintiff had returned to work and 24 days after the plaintiff had surgery to remove his tonsils).  The Jones Court concluded that an indefinite timeframe reading of the FMLA "defies the text [of the FMLA] . . . ."  Jones, 427 F.3d at 1320.

FMLA leave in anticipation of the litigation." Id. at 1322-23.

Here, even if this Court could conclude through a strained reading of the complaint that the plaintiff actually received a second treatment, this second treatment was scheduled for May 5, 2003. However, it appears from the complaint that since the plaintiff did not receive the second medical certification until May 20, 2003, that this is the likely date of that second treatment. However, regardless of which date the treatment was provided, it did not take place until after the initial designated period of incapacitation had expired. As such, the right to take leave under the FMLA was not triggered. See id. (holding that employee's absences from work did not qualify as FMLA absences because the employee failed to allege sufficient facts to demonstrate that he suffered from a "serious health condition" where his second treatment occurred two weeks after the initial period of incapacitation). Accordingly, even when viewing the facts in the light most favorable to the plaintiff, he has failed to allege sufficient facts to demonstrate that he suffered from a "serious health condition" within the meaning of the FMLA. Therefore, because of this failing, the defendants are entitled to judgment on the plaintiff's federal FMLA claim.

**(B)     The Plaintiff's District of Columbia Family and Medical Leave Act Claim**

In addition to a claim under the federal Family and Medical Leave Act, the plaintiff also asserts a violation of the District of Columbia Family and Medical Leave Act ("DCFMLA"). Compl. ¶ 37. The defendants argue, however, that this claim is barred by the statutes one-year statute of limitations. Defs.' Mem. at 7. Particularly, the defendants argue that the plaintiff's employment was terminated on May 7, 2003, and he did not commence this action until July 30, 2004, more than one year later. Id. In the plaintiff's opposition, he does not advance an argument to the contrary. Accordingly, this Court will treat this argument as conceded by the

plaintiff, and enter judgment in favor of the defendants. FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997); Stephenson v. Cox, 233 F. Supp. 2d 119, 121 (D.D.C. 2002).

However, even if this Court had to address the merits of this claim, the defendants would still be entitled to judgment in its favor.  The District of Columbia Code provides that "[n]o civil action may be commenced more than 1 year after the occurrence or discovery of the alleged violation [of the DCFMLA]."  D.C. Code § 32-510(b) (2001); see also Simmons v. District of Columbia, 977 F. Supp. 62, 64 (D.D.C. 1997).   The plaintiff's termination is the alleged unlawful action at issue in this litigation.  While the complaint does not identify the specific date on which the plaintiff learned of his termination, it is clear that he was notified of his termination in a letter sometime in early May, 2003.  Comp. ¶ 18.  Moreover, it was based on this letter that the plaintiff filed a grievance with the Superintendent of the DCPS on May 16, 2003.  Id. ¶ 19. Thus, it is clear that the plaintiff was aware of his termination at least by May 16, 2003. However, he did not file this action until July 30, 2004.  Therefore, even using the last possible date when it is clear that the plaintiff knew about the alleged unlawful act, the plaintiff did not file this action until more than two months after the one-year statute of limitations had elapsed. The plaintiff does not allege that he was not required to comply with the one-year statute of limitations, and the plaintiff's complaint evidences no reason for his failure to do so.[6] Accordingly, the defendants are entitled to judgment on the plaintiff's DCFMLA claim as well.

---

[6] A plaintiff need not exhaust available administrative remedies before bringing an action under the DCFMLA. Simmons, 977 F. Supp. at 64-65 ("the court concludes that the [DC]FMLA does not require exhaustion of administrative remedies prior to filing a civil action in court. Rather, the [DC]FMLA provides two alternative routes for an aggrieved party to seek redress for the alleged wrongdoing.").  Accordingly, the fact that the plaintiff was engaged in other internal and external grievance processes is not a basis for not filing this action within one year after his termination.

**(C)     The Plaintiff's Breach of Contract Claims**

The plaintiff asserts two breach of contract claims. First, he alleges that his union's collective bargaining agreement was breached when the defendants refused to conduct a grievance hearing in accordance with this agreement. Compl. ¶ 38. Second, the plaintiff supposes that by refusing to negotiate with his attorney, the defendants violated D.C. Code § 1-617.06 (2005), which according to the plaintiff amounts to a breach of contract. Id. ¶ 39. In both respects, it appears that the plaintiff contends that the defendants breached the collective bargaining agreement when they allegedly failed to address or attempt to settle his FMLA claims. The defendants seek dismissal of both claims alleging that this Court lacks subject matter jurisdiction to resolve them. Defs.' Mem. at 7-8. And because the plaintiff's opposition fails to respond to the defendants' jurisdictional challenge, the Court will treat the position as conceded. Bender, 127 F.3d at 67-68; Stephenson, 233 F. Supp. 2d at 121. Nonetheless, even if this Court had to examine the merits of the plaintiff's breach of contract claims, it is clear that they would not survive the defendants' motion.

First, to the extent the plaintiff believes the defendants breached the collective bargaining agreement by failing to address his federal FMLA claims, this argument has no merit because as indicated earlier in this opinion, the plaintiff has failed to properly allege a federal FMLA claim. Moreover, even if this Court could conclude that such a claim was properly alleged, it is well-settled that the District of Columbia Comprehensive Merit Personal Act, D.C. Code § 1-617.06 et seq. (2001) ("CMPA"), ". . . with a few exceptions, is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind." Robinson v. District of Columbia, 748 A.2d 409, 411 (D.C. 2000); see also, Hawkins v. Hall, 537 A.2d 571, 574

(D.C. 1988); Cooper v. AFSCME, Local 1033, 656 A.2d 1141, 1143-43 (D.C. 1995). In fact, the District of Columbia Court of Appeals indicated that in an earlier case it had noted:

> After reviewing the purpose and text of the CMPA, that the Council of the District of Columbia intended the Act to "address[] virtually every conceivable personnel issue among the District, its employees, and their unions — with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." We concluded that "the Council intended CMPA to provide District employees with their exclusive remedies for claims arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions."

Stockard v. Moss, 706 A.2d 561, 565 (D.C. 1997) (alteration in original) (internal citations omitted). Under the CMPA, an employee must bring such a grievance to the District of Columbia Public Employee Relations Board ("PERB"). Cooper, 656 A.2d at 1142-43. And only after a final order of the PERB has been issued can the plaintiff seek judicial review. D.C. Code § 1-617.13(c)(2003). Such review, however, must commence in the Superior Court of the District of Columbia. Id.; Feaster v. Vance, 832 A.2d 1277, 1282 (D.C. 2003). Moreover, the District of Columbia Court of Appeals has made it clear that "whether a union-represented employee challenges his [adverse employment action] via CMPA procedures or through a CMPA-sanctioned collective bargaining agreement, PERB retains exclusive, original jurisdiction to determine 'whether a particular breach (or alleged breach) . . . is also an unfair labor practice.'" Cooper, 656 A.2d at 1142-43.

Here, any failure on the part of the defendants to address the plaintiff's FMLA claims, as purportedly required under the collective bargaining agreement, is clearly an adverse personnel action that should have been brought before the PERB in the first instance. Moreover, to the extent that the plaintiff challenges the defendants' failure to allegedly follow CMPA procedures

16

set forth in D.C. Code § 1-617.06,[7] Compl. ¶ 39, this claim also must be first taken by the plaintiff to the PERB.  But the plaintiff does not allege that he has made any effort to have his breach of contract claims addressed by the PERB before coming to this Court.  Accordingly, the claim cannot be sustained.[8]

### (D)   The Plaintiff's Intentional Infliction of Emotional Distress Claim

The plaintiff claims that he suffered intentional infliction of emotional distress ("IIED") when the defendants (1) failed to comply with the federal and District of Columbia FMLAs; (2) refused to honor the terms of the collective bargaining agreement; and (3) terminated him for attempting to exercise his rights under the FMLA statutes and the collective bargaining agreement.  Compl ¶ 40.  The defendants assert that this count is deficient for two distinct reasons.  First, because the defendants have absolute governmental immunity, Defs.' Mem. at 8-9, and second because the plaintiff has alleged no facts in his complaint to satisfy the "outrageousness" requirement to establish an IIED claim, id. at 10-12.  Although the plaintiff fails to address the defendants' second argument, he supposes that governmental immunity does

---

[7] D.C. Code § 1-617.06 simply permits an individual to present a grievance to his employer at any time without the intervention of a labor organization.

[8] Even if this Court could conclude that the plaintiff's breach of contract claims were ripe for judicial review, it is doubtful that this Court would have jurisdiction over these claims.  The plaintiff appears to have asserted this Court's jurisdiction under the federal question doctrine because of the alleged violation of the federal FMLA.  Thus, it is likely that the plaintiff believed that his claims under the D.C. Code and the common-law would also be appropriately brought in this Court under the supplemental jurisdiction doctrine.  See 28 U.S.C. § 1367(a) (2000) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  However, because the plaintiff has not properly alleged a federal FMLA claim, this Court would not have jurisdiction over any of the state law claims.  See Shekoyan v. Sibley Intern., 409 F.3d 414, 424 (D.C. Cir. 2005) ("[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.") (alteration in original) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).

not exist in this case because the defendant deliberatively violated non-discretionary statutory obligations by failing to comply with the FMLA statutes. Pl.'s Opp'n at 4.  The Court need not address this argument, as it is clear that the plaintiff has failed to state a claim for IIED.

The District of Columbia Court of Appeals has it made clear that to state a claim for IIED, a plaintiff must establish "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'"  Adams, 597 A.2d at 35 (quoting Howard University v. Best, 484 A.2d 958, 985 (D.C. 1984)).  Moreover, IIED liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982) (citation omitted); Smith v. Union Labor Life Ins. Co., 620 A.2d 265, 270 (D.C. 1993) (citations omitted); Waldon v. Covington, 415 A.2d 1070, 1076 (D.C. 1980) (citations omitted).

Here, even if this Court could conclude that the defendants are not entitled to absolute immunity because they deliberately violated both the federal and District of Columbia FMLA statutes and the collective bargaining agreement by terminating the plaintiff despite the plaintiff's medical certification deeming him incapacitated, it is clear that the defendants' alleged actions are not "so outrageous in character . . . and so extreme in degree . . . " such that an IIED claim could be sustained.  Sere, 443 A.2d at 37.  In fact, many other courts have concluded that "adverse actions taken against an employee by an employer do not necessarily constitute 'extreme and outrageous' behavior" to warrant a finding of IIED.  Schoen v. Consumers United Group, Inc., 670 F. Supp. 367, 379 (D.D.C. 1986); see Adams, 597 A.2d at 35 (holding that

employer's conduct was not so extreme and outrageous where the employer discharged the employee for disobeying employer's order to drive a truck without proper documentation in violation of the law); Hoffman v. Hill Knowlton, Inc., 777 F. Supp. 1003, 1005 (D.D.C. 1991) (concluding that employer's conduct was not so extreme and outrageous where the employer terminated the employee due to his age, gave false pretextual reasons for the termination, and allegedly communicated the false reasons to future potential employers).  Here, the plaintiff's termination, even if it violated both the federal and District of Columbia FMLA statutes or the collective bargaining agreement, would not establish a viable IIED claim.[9]  Accordingly, the defendants are also entitled to judgment in their favor on the plaintiff's IIED claim.

## IV.    Conclusion

For the reasons set forth above, each count of the plaintiff's complaint is deficient as a matter of law.  Accordingly, the Court grants the defendants' motion for judgement on the pleadings and dismisses this case.

**SO ORDERED** on this 10th day of January, 2006.[10]

                                        REGGIE B. WALTON
                                        United States District Judge

---

[9] The alleged statutory and collective bargaining agreement violations are the only basis upon which the plaintiff's IIED claim is predicated.

[10] An Order consistent with the Court's Memorandum Opinion was issued on December 30, 2005.